JOHN H. TURNER ET AL. *v.* CITY OF HATTIESBURG.

[53 South. 681.]

CONSTITUTIONAL LAW. *Constitution* 1890, §§ 66, 80, 90, *par., p.,* 112, 178,
183, 201-213. *Statutes. Passage. Legislative question. Schools.
Municipal purpose. Corporations. General laws. Municipal aid
or credit. Uniform system of schools.*

The statutes, Laws 1910, ch. 119, § 9, p. 107, and ch. 120, p. 109,
authorizing municipalities to compete for the location of a state
college and to aid in its establishment by issuing bonds, etc., are
constitutional and not violative of:

(a) Constitution of 1890, § 112, provides that taxation shall be
uniform and equal, since taxes to pay the bonds are paid for the
location of the college, a municipal purpose; nor

(b) Constitution of 1890, § 178, providing that corporations shall be
formed under general laws only, since the college is merely an
agency of the state; nor

(c) Constitution of 1890, § 183, prohibiting corporations from lend-
ing their aid or credit to corporations; nor

(d) Constitution of 1890, § 90, subd. p., prohibiting the passage of
local law for the management or support of any private school;
nor

(e) Constitution of 1890, §§ 201-213, requiring the legislature to
establish a uniform system of free public schools; nor

(f) Constitution of 1890, § 80, a non self-executing provision, requir-
ing the enactment of general laws to prevent the abuse by municipal
corporations of the power of taxation and contracting debts; nor

(g) Do they not constitute a donation by the legislature, within
Constitution of 1890, § 66, providing that a bill granting a donation
shall not pass unless concurred in by two-thirds of each branch
of the legislature, and if a donation, the question of their passage
by the legislature is not a judicial one.

FROM the chancery court of Forrest county.

HON. THADDEUS A. WOOD, Chancellor.

Turner and others, resident citizens and tax payers
of the municipality, appellants, were complainants in
the court below; the city of Hattiesburg, appellee, was

98 Miss.—22

defendant there. The object of the suit was to enjoin the issuance of municipal bonds. From a decree sustaining a demurrer to the bill of complaint and dismissing the suit complainants appealed to the supreme court.

*S. E. Travis* and *Flowers, Fletcher & Whitfield,* for appellants.

Municipalities are creatures of the statute, and can exercise no powers not expressly granted or necessarily implied to carry the granted powers into effect. It was said by this court in the case of *Clinton* v. *Turner,* 95 Miss. 594, 52 South. 261: "Municipalities act under limited powers; and must find their authority clearly given in the law, and when so found they must follow the law."

This, so far as we have observed, is the universal rule of construction. *Hazlehurst* v. *Mayes,* 96 Miss. 656, 51 South. 890.

Hattiesburg, operating under chapter 99, Code 1906, as amended, had power under said Code of 1906, § 3346, "to issue bonds as hereinafter provided;" and under Code 1906, § 3415, as amended by laws 1910, chapter 142, p. 133, to issue bonds in certain cases therein enumerated; and, under section 4534 of Code of 1906, to issue bonds in certain other cases therein enumerated. These sections name every case in which it had the right to issue bonds for any purpose. But none of the provisions referred to authorize the issuance of bonds for the location and maintenance of the Mississippi Normal College, or any other state institution. There is no general statute anywhere that gave municipalities power to issue bonds for any other than strictly municipal purposes.

The act creating the said Mississippi Normal College was passed in violation of section 178 of the Constitution, providing that corporations shall be formed under general laws, only; and therefore, has no legal existence.

It will perhaps be urged here, as in the court below, that the Mississippi Normal College is a public corpora-

tion or subdivision of the state government, and, therefore, not a "corporation" in the same sense the term is employed in the Constitution.

Now, to refute our contention, it must be established that the Mississippi Normal College is not a "corporation" in the sense the term is employed in the Constitution. By reference to the act, it will be seen that it is created a body politic and corporate, with practically the same rights, powers and privileges as are conferred upon corporations generally by the Code chapter on the subject.

The construction of section 178 of the Constitution, here contended for, is emphasized by reference to section 88 thereof, which makes it the duty of the legislature to pass general laws under which corporations may be created, organized, etc. Here the word "corporations" is used without any limitation whatever. *Yazoo City* v. *Lightcap*, 82 Miss. 178; *School District* v. *St. Joseph Ins. Co.*, 103 U. S. 26, L. Ed. 601; *Adams* v. *Railway Co.*, 78 Miss. 887; *Railway Co.* v. *Adams*, 79 Miss. 408.

The act creating the Mississippi Normal College and the act authorizing the issuance of bonds therefor, being local in their application are violative of section 80 of the Constitution, which requires that provisions be made by general laws "to prevent the abuse by cities, towns and other municipal corporations of their powers of assessment, taxation, borrowing money and contracting debts."

It has been suggested that the said act authorizing the issuance of bonds is a general and not a local law. The wording of the act implies that it was intended to apply only to the municipality receiving the college. Section 9 of the act attempting to create the college says: "The board of trustees shall, as soon as practicable after their appointment, arrange to receive from the localities desiring to receive the locations of said school, proposals

for donations," etc.  And, while the other act authorizes
the municipalities of the state to issue bonds, etc., it was
never contemplated that each and all of them should
issue bonds, and if that theory is pursued, then no bonds
could be valid unless each and every municipality joined
in the issue.

The act creating the college and the act authorizing
the issuance of bonds, therefore, are violative of section
112 of the Mississippi Constitution, which requires that
taxation shall be "uniform and equal throughout the
state."

The legislature here proposes to establish a great in-
stitution, to belong exclusively to the state, and at the
same time to entail the cost of procuring a site and erect-
ing buildings therefor upon the city or county or both,
that might put up the funds necessary for such purposes.
If the city of Hattiesburg furnish this money, the tax-
payers of these communities will have to pay for it.

The "uniformity" of the Constitution, simply means
that all the taxable property in the state be taxed alike
for state objects, where such objects only are involved,
so as to make the burden uniform as to all taxpayers
throughout the state, as to state objects.  Local taxation
is controlled by the same principles.  *Adams* v. *Bank,*
75 Miss. 701; *Adams* v. *Lumber Co.,* 84 Miss. 23; *Adams*
v. *Kuykendall,* 83 Miss. 571.

The act creating the college and the act authorizing
municipalities to issue bonds to secure the same are vio-
lative of subdivision "p" of section 90 of the Constitu-
tion, which makes it unlawful for the legislature to pass
any local, private or special law "providing for the man-
agement or support of any private or common school,
incorporating the same or granting such school any priv-
ileges."

It may be urged that the Mississippi Normal College
is not a school of the class here meant; yet, it will be
seen by section 2 of the act creating the college that its

object is "to qualify teachers for the public schools of the state, by imparting instruction in the art and practice of teaching in all branches of study which pertain to a common school education," etc.

The act creating Mississippi Normal College is violative of article 8 of the Constitution, on the subject of education, and requiring that the legislature shall establish a uniform system of public schools and provide for the government of the same.

It will doubtless be urged that the Mississippi Normal College is to be no part of the public school system, yet it will be seen from the language of the act that its main feature is to qualify teachers for those schools. And the act further provides, "No one shall be eligible to admission to such schools, who shall not have completed the studies of course prescribed by law for the common public schools of the state and the course shall always be confined or restricted to a strictly normal or professional course for training teachers to teach in the public schools of the state."

Section 14 of the act provides "Tuition shall be free to all students of Mississippi Normal College who give a written pledge to teach for a period of not less than three years in the public schools of the state," etc.

It cannot be maintained, in the face of these provisions, that this school is not to be auxiliary to, and in aid of, the public school system of the state.

It will be further noticed, that said act takes the management and control of said Mississippi Normal College from the officers and agencies in charge of the public schools of the state generally and creates an independent board of trustees, to manage and control the college.

It follows that, under authority of *Ellis* v. *Greaves,* 82 Miss. 36, this act is in conflict with said constitutional provisions and, therefore, void. The act creating Mississippi Normal College is violative of section 66 of the

Constitution as amended, because passed by less than two-thirds majority of the legislature.

We are aware of the decisions of this court, *Ex parte Wren*, 63 Miss. 512, and *Hunt* v. *Wright*, 70 Miss. 298, holding that the courts cannot look back to the journal. We desire to be classed among the most reluctant to take issue with this or any other court of last resort. The point is raised here, primarily because this objection has been urged by contemplated buyers of the bonds in issue.

It will be noted that the court was required to overrule *Brady* v. *West*, 50 Miss. 68, to reach the above conclusion. This last case quotes from Cooley's Constitutional Limitations: "Each house keeps a journal of its proceedings, which is a public record, and of which the courts are at liberty to take judicial notice," and there are many authorities in perfect accord with the *Brady case, supra.*

"The journals of the two houses of the legislature, in connection with other competent evidence on the subject, may be examined as means of information to aid in arriving at a correct conclusion as to what was the action of the legislature on any particular bill before it." *Berry* v. *B. & D. P. R. R. Co.*, 20 Am. Rep. 69; *Hunt* v. *State*, 22 Texas App. 396; *People* v. *Mahaney*, 13 Mich. 481; *Attorney-General* v. *Jay*, 55 Mich. —; *Rode* v. *Phelps*, 80 Mich. 598; *People* v. *Burch*, 84 Mich. 408; *Detroit* v. *Detroit Board of Assessors*, 91 Mich. 78; *Fordyce* v. *Goodman*, 20 Ohio St. 1; *County* v. *P. R. Co.*, 13 Fed. 722; *Smythee* v. *Garth*, 33 Ark. 17; *Worthen* v. *Badgett*, 32 Ark. 496; *Fowler* v. *Pierce*, 2 Cal. 165; *McCullough* v. *State*, 11 Ind. 424.

*D. E. Sullivan*, for appellee.

It is well established that the legislature may authorize a municipality to issue and sell its bonds, in the aid of public enterprise, if there are no constitutional limitations or restrictions. It cannot be doubted that the sale

of bonds for the purpose of procuring the location of
the Mississippi Normal College in the corporate limits
of the city is for a public purpose and for a public ben-
efit. The bill shows on its face, that there was sharp
rivalry for the location of said college; three cities have
offered large sums of money and valuable lands for a
site to procure the location of the institution. The bill
shows that the city of Hattiesburg offered two hundred
and fifty thousand dollars and a valuable site to procure
the location of the college within its corporate limits,
and another city offered two hundred and twenty-five
thousand dollars and valuable lands for the site, and
another offered two hundred and fifty thousand dollars
and valuable lands for a site. These facts show that
the college is expected to be of great benefit to any
locality where it shall be located, and that the benefit is
a public one, and taxpayers and property owners in such
locality are the beneficiaries; therefore, money expended
or taxes levied by a municipality or a county to procure
the location of this institution are expended or levied
for a public purpose and a public benefit.

The court's attention is directed to the decisions in
several other states where laws similar to chapter
120, Laws of 1910, have been sustained. See the case
of *Lund* v. *Chippewa County*, 34 L. R. A. 131.

Also the case of *Livingston* v. *Darlington*, 101 U. S.
407, L. Ed. 1015, is a leading case on this point. In this
case, a law of the state of Illinois establishing a state
reform school and authorizing municipal corporations to
donate money to secure its location within their limits
was sustained. *Hensley* v. *People*, 84 Ill. 254; *Cox* v.
*Commissioners of Pitt County*, 16 L. R. A. (N. S.) 253.

I understand that the supreme court of Tennessee has
recently held valid and constitutional a law somewhat
similar to chapter 120, Laws of 1910, which authorizes
cities and counties to issue and sell bonds for the pur-
pose of procuring the location of Normal Schools. The
style of the case is *Murfreesboro Normal School* v. *Ran-*

*som*, and the decision was rendered probably during the year 1909, but I have not been able to find it reported.

The foregoing authorities show that the legislature is authorized to empower municipalities to sell bonds for the purpose of procuring the location of the college, unless there is something in the state Constitution which prohibits the enactment of such law. Section 183 of the Constitution is the only provision which seems to have any bearing on the point at all; this section prohibits counties and municipalities from making appropriations to or lending credit on any railroad, or any other corporation or association. This section has reference to private corporations which are organized and operated for gain or profit; it has no reference whatever to a public institution of learning belonging to or controlled by the state. Such an institution as the Mississippi Normal College, if a corporation at all, is a public corporation, or a public quasi corporation.

The supreme court of this state in the case of *State* v. *Vicksburg, etc. R. Co.*, 51 Miss. 361, held that the University of Mississippi and the Alcorn A. & M. College are not in the legal sense private corporations.

Section 183 of the Constitution was never intended to prohibit municipalities and counties from rendering aid to public institutions of learning.

The same argument applies to the objection that the law creating the Mississippi Normal School is in violation of section 178 of the Constitution, which requires that corporations shall be formed under general laws only. Section 66 of the Constitution has no application here. *Ex parte Wren*, 63 Miss. 512; *Hunt* v. *Wright*, 70 Miss. 298.

Smith, J., delivered the opinion of the court.

By chapter 119 of the Acts of 1910, the Mississippi Normal College was created. By section 9 of this act the board of trustees of this college were directed to "locate the same in the place offering the most advan-

tageous conditions, all things considered." By chapter·
120 of the Acts of 1910, municipalities of Mississippi
were authorized to issue bonds for the purpose of pro-
curing the location of this college in the municipality
issuing same. The city of Hattiesburg, having become·
the highest bidder therefor, obtained this location, and
was preparing to issue bonds in order to obtain the
money necessary to enable it to carry out its promise of
aid to the college. The first order passed by the board
of mayor and aldermen provided for the issuance of
bonds to the amount of fifty-seven thousand and five
hundred dollars. It being ascertained that this amount
would be insufficient, before any bonds were in fact is-
sued, another order was entered by the board of mayor
and aldermen, authorizing the issuance of additional
bonds to the amount of ninety-two thousand and five hun-
dred dollars, making the aggregate sum of one hun-
dred and fifty thousand dollars. Thereupon appellants.
filed their bill in the court below, praying that appellee
be enjoined from issuing its bonds, on the ground that
both the act creating the college and the act authorizing
the issuance of bonds are unconstitutional, and, there-
fore void. From a decree overruling a demurrer inter-
posed by appellants to this bill, this appeal is taken.

It is alleged that chapter 120 failed to receive the
concurrence of two-thirds of each branch of the legisla-
ture, and therefore was not passed in accordance with
section 66 of the Constitution of 1890, which is as fol-
lows: "No law granting a donation, or gratuity, in favor
of any person or object shall be enacted, except by the
concurrence of two-thirds of each branch of the legis-
lature, nor by any vote for sectarian purpose or use."
This act is not a grant by the legislature of a donation
at all, but is simply an act authorizing municipalities to
aid the state in establishing this college. Moreover, this
objection to the act does not raise a judicial question.
*Ex parte Wren*, 63 Miss. 512, 56 Am. Rep. 825; *Hunt* v.
*Wright*, 70 Miss. 298, 11 South. 608.

The next three objections to these acts are as follows, and may be considered together:

"The act of the legislature (Laws 1910, p. 109, c. 120) authorizing municipalities in the state of Mississippi to issue bonds for the purpose of locating said Mississippi Normal College is unconstitutional, because it authorizes the taxation of the property of the people of said city of Hattiesburg, locally, for the establishment and maintenance of an institution to belong, not to the said city of Hattiesburg, but to the state of Mississippi.

"Said act of the legislature authorizing municipalities of the state of Mississippi to issue bonds for the establishment and maintenance of said Mississippi Normal College is unconstitutional and void, because such aid to said institution is not within the corporate purposes and powers of the said city of Hattiesburg.

"The said act of the legislature creating said Mississippi Normal College and the said act authorizing municipalities to issue bonds therefor are violative of section 112 of the Mississippi Constitution, which provides that 'taxation shall be uniform and equal throughout the state.'"

That the establishment and maintenance of schools is a municipal purpose is too well established in our laws to be now denied. While this college is a state institution, and its property will be owned and controlled by the state, many local benefits will accrue to the city of Hattiesburg on account of its location there, and it is for the purpose of obtaining these local benefits, peculiar to the city of Hattiesburg, that the bonds are to be issued and taxes levied for the payment thereof. These bonds, therefore, will be issued and taxes collected, not for a state or county purpose, but for a strictly municipal purpose. *Ransom* v. *Rutherford County* (Tenn.), 130 S. W. 1057; *Lund* v. *Chippewa County,* 93 Wis. 640, 67 N. W. 927, 34 L. R. A. 131; *Cox* v. *Commissioners of*

*Pitt County,* 146 N. C. 584, 60 S. E. 516, 16 L. R. A. (N. S.) 253.

Again it is said: "The act (Laws 1910, p. 105, c. 119) creating the Mississippi Normal College, a corporation, is violative of section 178 of the Mississippi Constitution, providing that corporations shall be formed under general laws, only, and it therefore follows that said Mississippi Normal College has no lawful existence and cannot lawfully receive aid from said city and said city cannot lawfully grant it aid as contemplated by the issuance of the bonds complained of," and that "the said act of the legislature authorizing municipalities to issue bonds for the purpose of procuring said college is violative of section 183 of the Constitution of 1890, which makes it unlawful for any 'county, city, town or other municipal corporation' to become a subscriber to the capital stock of any corporation or association or to 'make appropriations or loan its credit in aid of such corporation or association.'" The Mississippi Normal College is not the character of corporation dealt with in sections 178 and 183 of the Constitution. It is simply an agency of the state, created by it for the purpose of enabling it to discharge its duty of providing a complete system of schools and colleges. *Ransom* v. *Rutherford County, supra; State* v. *V. & N. R. R.,* 51 Miss. 361.

Another objection urged is that "the said act of the legislature creating said Mississippi Normal College and the said act of the legislature authorizing municipalities to make donations therefor are violative of subdivision 'p,' section 90, of the Mississippi Constitution, which makes it unlawful for the legislature to pass any local, private, or special laws 'providing for the management or support of any private or common school, incorporating the same or granting such school any privileges,'" and that "said act of the legislature creating said Mississippi Normal College is violative of article 8 of the Mississippi Constitution, which makes it the duty of

the legislature to establish a uniform system of free
public schools in the state and to provide for the gov-
ernment of the same." . This college is neither a private
nor a common school. It is a college established for the
purpose of enabling the state to equip its teachers for
service in its common schools, and, consequently, neither
of these objections are well taken.

The most serious objection raised by appellants is that
"the said act creating the Mississippi Normal College
and the said act authorizing municipalities in the state
of Mississippi to make donations to secure the location
thereof, being local in their application and not general
laws, are violative of section 80 of the Mississippi Con-
stitution, which requires that provision be made by gen-
eral laws 'to prevent the abuse by cities, towns, and
other municipal corporations of their powers of assess-
ment, taxation, borrowing money, and contracting
debts.'" The section of the Constitution brought under
review by this objection is as follows: "Provision shall
be made by general laws to prevent the abuse by cities,
towns, and other municipal corporations of their powers
of assessment, taxation, borrowing money, and contract-
ing debts." It is argued that, instead of limiting the
abuse by municipalities of their powers of assessment,
taxation, etc., the legislature, by these two acts, has
opened wide the door to extravagance; that it has thereby
not only authorized municipalities to issue bonds and
impose taxes for the purpose therein provided, without
limit, but that it has encouraged extravagance, by pro-
viding, in effect, that the location of the school shall
be determined by public auction, the municipality obtain-
ing same which bids the highest amount therefor. This
may all be true, but this court is powerless to remedy
the matter. Section 80 is not self-executing. It requires
legislation to put it into effect. It is for the Legislature
to say what constitutes abuse of such powers of a mu-
nicipality, and to provide checks thereon. These checks

are to be provided by general laws covering all cases, and not necessarily in each particular law giving such powers to municipalities.

There is no merit in any of the other objections.

*The decree of the court below is therefore affirmed.*

ANDERSON, J., delivered the following dissenting opinion.

I dissent from the majority opinion, so far as it upholds the constitutionality of chapter 120 of the Laws of 1910. In my judgment this statute is clearly repugnant to section 80 of the Constitution, by which the legislature is commanded ·to enact "general laws to prevent the abuse, by cities, towns, or other municipal corporations, of their powers of assessment, taxation, borrowing money, and contracting debts;" the evident purpose of which was to prevent abuses of the taxing power, either by municipal boards or electorates. Legislation is necessary to carry out the constitutional mandate, and this had been done by sections 3317, 3318, 3415, 3416, and 3430, Code 1906. But now the statute in question comes along, and abrogates the restrictions imposed by those statutes, and gives municipalities, for the purpose of aiding this normal college, unbridled license to issue bonds in any amount whatever, even to the point that taxation necessary to pay the same will amount to confiscation. It is true, this provision of the Constitution is not self-executing, in the sense that by its terms a limitation is fixed, beyond which municipalities may not go; but it is self-enforcing to the extent that it condemns laws, like the one in question, which contain no limit, the effect of which is to encourage, rather than restrain, the abuse of the taxing power. It is left· to the legislative judgment to determine what restrictions shall be imposed; and, when exercised, the courts are powerless to set aside such judgment and substitute their own. But

that is not the case here. There has been no exercise
of the legislative judgment fixing a limit, but, on the con-
trary, a plain attempt to override the constitutional com-
mand.

The question involved is far-reaching and important.
To illustrate: Section 84 of the Constitution enjoins
upon the legislature to enact laws restricting or pre-
venting non-resident aliens in the ownership of lands in
this state, and limiting the amount which may be held
by corporations. Would a law be constitutional, per-
mitting non-resident aliens, and corporations to acquire
and hold lands in unlimited quantities? Section 201 of
the Constitution enjoins upon the legislature the duty of
"establishing a uniform system of free public schools,
by taxation, or otherwise." Can the legislature disre-
gard this command, and establish "a uniform system"
of public pay schools?