STATE BOARD OF EDUCATION *et al. v.* J. E. PRIDGEN.

[63 South. 416.]

STATUTES. *Special or local laws. Establishment and regulation of schools. Constitution* 1890, *sections* 90, 205 *and* 206. *Laws* 1912, *Chapter* 5.

Under section 90, Constitution 1890, the support of the common schools by appropriation from the state treasury can only be done in the manner and upon the plan prescribed by section 205 of the Constitution. Chapter 5 of the Laws of 1912 is a law providing for the support of a class of common schools. The schools of certain counties provided for by the law are separated from and placed in a different class from the schools located in the other counties and are given special privileges and accorded additional support, not enjoyed by the schools located in other counties of the state. Such act is a special law to fit local conditions. It does not pretend to distribute the "supplemental common school fund" upon the constitutional basis, and is condemned by paragraph "P" of section 90 of the Constitution of 1890.

APPEAL from the chancery court of Hinds county.

HON. P. Z. JONES, Chancellor.

Injunction by J. E. Pridgen against the state board of education and Duncan L. Thompson, auditor of public accounts. From a decree for complainant, defendants appeal.

This is a suit for injunction commenced by the appellee, seeking to enjoin the state board of education and the auditor of public accounts from issuing a warrant for the relief of Jackson county. The chancellor granted the injunction.

The legislature at its session in 1912 passed the following act, to wit:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that there is hereby appropriated out of any money in the state treasury not otherwise ap-

propriated, the sum of five thousand dollars ($5000), or so much thereof as may be necessary to be known as a supplemental common school fund.

"Section 2. The said money shall be drawn from the state treasury under the following conditions, viz.: When any county in the state, administering its schools on the basis of state aid, shall have exhausted all money appropriated by the state for common school purposes, and whose common schools cannot run for the constitutional period of four months, the county superintendent of education, with the advice and consent of the county school board shall apply in writing, to the state board of education for such a sum as may be necessary to continue the schools of said county for said term of four months. Said application must be made on or before September the 30th preceding the scholastic year for which the aid is desired. If, after a careful investigation of such application, it shall appear to the state board of education that such application is just and proper the state board shall draw an order on the auditor of public accounts in favor of the county treasurer of the county whose application is approved for such a sum as the state board of education shall deem as necessary to carry into effect the application made by the county superintendent of education, and the school board of the county applying for such aid, and such money shall be used for the common schools of said county, as now provided by law. Provided, however, that should such sums applied for from the several counties exceed the amount appropriated, then the state board of education shall have power, and they are hereby instructed to apportion the fund in accordance with the needs of the respective counties."

*J. A. P. Campbell,* for appellant.

Appropriating money from the state treasury is a legislative function, and therefore, the Constitution does not

contain a specific grant of power to appropriate. If there was no limitation by the Constitution of the power of the legislature to appropriate, it could, by a bare majority, empty the treasury at will. The Constitution provides how appropriations shall be made, and prohibits some. Sections 63, 64, 68 and 69.

Subject to these provisions, the power of the legislature over appropriations is unlimited. Observing the provisions of the Constitution as to appropriations, the legislature may appropriate money for any state purpose, wise or not, and the courts may not properly interfere.

Where is the prohibition to appropriate to supply a deficiency in the common school fund? If in the effort to obey the Constitution by appropriating a common school fund sufficient to meet the requirements of the Constitution, an insufficient sum is appropriated, where is the wrong of obeying the Constitution by a supplemental appropriation? There is nothing in the Constitution prohibiting it. May not the legislature correct a mistake? May it not anticipate a possible contingency, and provide for it if it shall occur? There is nothing in the Constitution limiting the legislature to one act to provide the school fund. If the Constitution is obeyed, what difference whether by one act or by two, by an unconditional appropriation or a conditional one? The constitution does not require an impossibility, i. e., to know in advance what sum from the state treasury will be necessary to maintain schools four months in the seventy-nine counties of the state of Mississippi, and it does not deny the right to provide for the contingency of an insufficient appropriation. What difference whether the proper sum is appropriated by an act in advance, or by one after an insufficiency is discovered?

The Constitution by section 206, as amended, requires a common school fund consisting of poll tax collected and retained in each county, and a state common school fund

to be taken from the general fund in the state treasury, the state fund to be distributed among the several counties and separate school districts in proportion to the number of educable children in each, which aggregated fund shall be sufficient to maintain the schools for four months in each scholastic year. The legislature must determine what sum from the state treasury will be sufficient to obey the Constitutional mandate. It is impossible to do more than approximate the sum required. The appropriation is for the future. It cannot be known beforehand, either, what sum will arise from the poll tax, or what the number of educable children in each county and school district will be. Great change occurs both as to poll tax collected from year to year, and the number of educable children from lapse of time and change of residence with our migratory population. The enumeration of educable children is quadriennial. It cannot be accurately known what the cost of maintaining schools will be in each county. If the legislature appropriates too much, some counties, and districts will get too much. To avoid this, it is wise to appropriate too small a sum and supplement it as necessary. The supplementary appropriation is not from the state school fund, but from any money not otherwise appropriated. In that way the Constitution is obeyed, not violated.

Wherein is the Constitution violated, in letter or spirit by the act providing for the probable contingency of some counties and districts not getting enough to obey the Constitution by maintaining schools four months in each scholastic year?

What wrong is done to counties which received more than enough to maintain schools four months each year? The supplementary act does justice to counties having little from poll tax and large numbers of educable children, and no wrong to those differently situated.

What hinders the legislature from appropriating to any state purpose any money not otherwise appropriated?

The act assailed effects the Constitutional mandate, does justice between the counties and school districts, and wrongs none. Surely, counties that receive more than enough to maintain schools cannot be heard to complain, and those receiving less, do not.

*Frank Johnston,* assistant attorney-general, for the appellant.

It is objected that this statute violates section 69 of the Constitution. Section 69 has no reference whatever to this statute or this fund. It undertakes to regulate general appropriation bills, and declares what such bills should contain, and forbids the engrafting of any legislation on general appropriation bills, except the conditions on which the money is thereby to be drawn and the purposes for which it shall be paid. I suggest further that any bearing section 69 of the Constitution has on this question is met by the answer that section 69 applies exclusively to general appropriation bills. This is not a general appropriation bill; on the contrary it is an appropriation for a distinct purpose and object and the act, as such, is not effected by any of the provisions of section 69 of the Constitution.

*Second.* It is objected further, that this statute violates section 90 of the Constitution. Section 90 provides that the legislature shall not pass local, private or special laws in any of the following enumerated cases, but such matters shall be provided for by general laws. And in this enumeration is paragraph "P" which provides for the support of any private or common school, incorporating the same, or granting such school any privilege.

This statute is clearly not within the provisions of section 90 of the Constitution. This section is intended, as expressed in direct terms, to forbid the legislature from passing any local, private or special laws in the enumerated cases; and then among the enumerated cases is paragraph "P" which must be read that, the legislature

must not pass any local, private, or special law for the management or support of any private or common school, incorporating the same, or granting such school any privileges. An act of the legislature to come within section 90 of the Constitution must be a local law, or a private law, or a special law for a private school, or some particular common school, incorporating the asme, or granting the same some privilege. The whole scope of this provision of the Constitution is evidently to prevent the legislature from conferring, by special act upon any school any special privilege.

This is not a local, or private, or special law in any sense. It does not provide for the management or support, or any particular private or common school. On the contrary it is a general law, state wide in its operation and applies to any county in the whole state that comes within the conditions mentioned by this statute. There is not a county in the state that is excluded from its operation. It is in the broadest, fullest sense of the word, a general statute applying to the entire state and operating upon every county in the state that may come within the conditions mentioned in the statute.

*J. M. Vardaman,* for appellee.

Section 90 (p) of the Constitution provides that there shall be no local, private or special laws providing for the management or support of any private or common school, incorporating the same, or granting such school any privileges.

Section 2 of the act under consideration provides that "When any county administering its schools under the present basis of state aid shall have exhausted all money appropriated by the state for school purposes, and whose school cannot run for the constitutional term of four months, the county superintendent of education, with the advice and consent of the county school board, shall apply, in writing, to the state board of education for such

a sum as may be necessary to continue the schools for the term of four months." It then provides that if the state board of education decides that such application is just and proper, that same shall be allowed and a warrant drawn therefor.

Ever since the Constitution was adopted, practically the same counties have been the "sufferers" from this "supposed" inequitable distribution of the school fund, and this law was passed to help out these "suffering" counties and put them on an equal basis with the other counties in the state. Certainly it was not passed for the benefit of those counties whose schools are run for six and eight months in each year with a surplus remaining in the school fund. When the legislature passed this law they knew, or they could have found out from data in the office of the superintendent of education, the exact counties that would be benefited by this law.

On its face it has the innocent appearance of being a general law relating to "schools, etc.," but when it is put in practical application, it is found that it is purely local and private with respect to the counties which it affects, the same as if the counties had been named. In *Winton* v. *Day*, 96 Miss. 1, the court had up for consideration a law similar to the one before the court in this case. In that case the court was called upon to construe chapter 121, Laws of 1908, which act allowed *"bona fide"* owners of land, assessed for taxes as required by law, which lands had been struck off to the state prior to 1875, and were not returned in the list to the auditor that year under the "abatement act," and which have not been previously and validly disposed of by the state, to pay to the land commissioner a fee of two dollars and fifty cents for a patent and receive a patent to said lands, the same as in case of forfeited tax lands. The court held that the act was unconstitutional and void, being violative of section 90 (u) of the Constitution, providing that "the legislature shall not pass any local, private or special

106 Miss. 15

laws granting any lands under the control of the state to any person or corporation.'' In the course of the opinion, the court, speaking through Justice Mayes, said: ''Under no provision of the statute in question is the land which the statute attempts to deal with open to the acquirement of all persons,; but it can only be acquired by certain persons named in the act, and the act makes the grant to them to the exclusion of all other persons.'' *Winton* v. *Day,* 96 Miss. 1.

In the case before the court now, the enumeration of the beneficiaries is not quite so explicit as in the Winton case, but when the law is put into practical operation, it only acts on certain counties in the state and, if history repeats itself, as it has done for the last twenty years, it will continue to act to the benefit of these counties and these counties alone. For the reason that the law acts only on certain counties I contend that it is local and private in its nature, and therefore violates section 90 (p) of the Constitution and is void.

Section 205 of the Constitution provides that there shall be a common school in each district for the term of four months in each scholastic year and that any school district failing to maintain its school for the term of four months shall only receive enough of its *pro rata* of the common school fund to pay the teachers for the time actually taught. All through this section the word ''shall'' is used, and counsel for appellant earnestly contend that it is used in a mandatory sense, in which contention I heartily agree with him.

Although counsel for appellant earnestly urges that this section be taken as mandatory in every word, if it is put into practical operation, the law, the constitutionality of which he seeks to uphold, must fail. This section of the Constitution provides that ''any school district failing to maintain its schools for the constitutional term of four months, shall be entitled to only such part of the free school fund as may be required to pay the teachers for

the time actually taught.'' The law before the court pro-
vides that this money or some part thereof shall be paid
out only ''when the school cannot run the constitutional
term of four months on the present basis of state aid,''
and if this section of the Constitution is held to be man-
datory in all of its provisions, it precludes the legislature
from giving any further aid to the schools in order that
they may run the ''constitutional term.''

Section 206 of the Constitution provides that there shall
be a county and state common school fund, which together
shall be sufficient to maintain the common schools for
the constitutional term of four months, and that this fund
shall be distributed in proportion to the number of edu-
cable children in each county.

As will be noted this section has to do with the school
funds necessary to support the common schools. This
section uses practically the same language as the preced-
ing section, and in my humble opinion, is as much man-
datory as section 205. How could language be more man-
datory and how could the legislature be limited by impli-
cation to a greater extent. The Constitution provides a
fund for the support of the common schools, states em-
phatically that this fund shall be sufficient to maintain
the schools for a certain time, and even goes so far as
to prescribe the manner in which this fund shall be dis-
tributed. In what better way could the framers of the
Constitution indicate their desire that the common
schools be left entirely under the control of the constitu-
tional provisions and forever taken out of the hands of
the legislature.

It is a well-known principle of constitutional law that
the Constitution may prohibit or limit the legislature as
well by implication as by an express limitation or prohi-
bition. In the instant case the Constitution has dealt
with the question of the support of the common schools,
not only as to general matters relating thereto, but has
gone so far as to set out the manner in which the con-

stitutional mandate should be carried out.   Is not this an implied prohibition on the legislature?

In the case of *Henry* v. *State,* 87 Miss. 125 (followed in *Lumber Co.* v. *State,* 97 Miss. 355), the court, in a very able opinion by Justice CALHOUN, laid down the following rules of construction, viz: "Another principle is that, where the Constitution deals with the subject its words must be the sole boundary, and sacred from the legislatures, except where it permits expressly or by necessary implication."

"Another is that, where the Constitution schedules powers, giving or taking away, it must be presumed to have scheduled all, and it only must be looked to, with its necessary implication, for the limit of authority or construction." 87 Miss. 129; *Beck* v. *Allen,* 58 Miss. 143.

It has been the almost uniform holding of the courts of the various states of the country and of the United States supreme court that, where a Constitution deals with a subject in general terms, the legislature has the implied authority and power to pass laws that may be necessary and proper to enforce the constitutional mandate. But it has also been the holding of the various courts that, where the Constitution deals with a subject in specific terms and prescribes the mode or manner in which the Constitution shall be obeyed, the mode or manner set forth in the Constitution is the only way in which the act may be done or the power exercised.  In other words, where the Constitution prescribed a method or manner in which an act is to be done, the legislature is precluded from doing that act in any other way.  A number of leading cases holding to this rule of construction are, viz:   *State* v. *Johnson,* 26 Ark. 281; *Cohen* v. *Virginia,* 6 Wheat. 274, 398, 5 L. Ed. 257; *Morris* v. *Powell,* 125 Ind. 281, 9 L. R. A. 226; *Collins* v. *Henderson,* 74 Ky. 74; *Evansville* v. *Indiana,* 4 L. R. A. 93; *Page* v. *Allen,* 58 Pa. 338, 98 Am. Dec. 273; *Cook County* v. *Chi. I Sch. for Girls,* 1 L. R. A. 437.

Other cases holding to a strict construction of constitutional provisions relating to common schools are, viz.: *Chrisman* v. *Brookhaven,* 70 Miss. 277; *Ellis* v. *Greaves,* 82 Miss 36; *Hewes* v. *Langford* (Miss.), 62 So. 358; *City of Jackson* v. *Hinds County* (Miss.), 61 So. 175; *Underwood* v. *Wood* (Ky.), 15 L. R. A. 825; *Shanklin* v. *Boyd,* 146 Ky. 460, 38 L. R. A. (N. S.) 710.

The honorable assistant attorney-general in his admirable brief for the state cites the following cases in support of his contention, viz.: *McCullough* v. *Maryland,* 4 Wheat. 316; *Martin* v. *Hunter's Lessee,* 1 Wheat. 304; *Ogden* v. *Saunders,* 12 Wheat. 332.

These three cases are decisions handed down by the United States supreme court. In each of the cases, the question before the court was whether Congress had overstepped its authority in passing laws to aid in carrying out a general power given to it by the United States Constitution. In each, the court held, and rightly so, that Congress had the authority to pass laws necessary to carry out the general power granted it by the Constitution. But in none of the cases did the court have up for consideration a question similar to the question in the case at bar. In those cases, the question was the grant of a general power with no mention of the manner in which the same might be exercised, while in the case at bar, the duty is enjoined on the legislature and the manner in which this duty is to be performed is explicitly set forth. In the case of *Cohen* v. *Virginia,* 6 Wheat. 264, 5 L. Ed. 287, the United States supreme court held that where the Constitution conferred appellate jurisdiction on the supreme court of the United States, and no other jurisdiction was mentioned, the silence of the Constitution on the subject precluded the court from exercising any other jurisdiction than that set forth in the Constitution. *Cohen* v. *Virginia,* 6 Wheat. 264, 5 L. Ed. 287.

Argued orally by *J. A. P. Campbell* and *Frank Johnston,* for the state and *J. Money Vardaman,* for appellee.

COOK, J., delivered the opinion of the court.

J. E. Pridgen, a citizen of this state and taxpayer of Hinds county, exhibited his bill of complaint in the chancery court of Hinds county against the board of education and Duncan L. Thompson, auditor of public accounts, in which bill it is alleged that the board of education, acting under the authority of chapter 5 of the Laws of 1912, entitled, "An act to appropriate five thousand dollars, or so much thereof as may be necessary, as a supplemental common school fund and to direct the distribution of the same," had, upon the application of the county superintendent of education of Jackson county, drawn "an order on the auditor of public accounts in favor of the county treasurer of Jackson county for the sum of one thousand, nine hundred and ninety-four dollars and eighteen cents, and that the auditor of public accounts threatened to and would pay said sum of money, unless he was restrained from so doing by the chancery court. An injunction was granted by the chancellor as prayed for. The defendant demurred to said bill and made a motion to dissolve the injunction thereon, which demurrer and motion to dissolve was overruled and the injunction made perpetual. From this decree this appeal is prosecuted.

Complainant below, appellee here, contends that chapter 5 of the Laws of 1912, violates sections 69, 90, 205, and 206 of the state Constitution. The act of the legislature we are called upon to review provides for a special appropriation of five thousand dollars, to be used "when any county in the state, administering its schools on the present basis of state aid, shall have exhausted all money appropriated by the state for common school purposes, and whose schools cannot run for the constitutional period of four months. The state board of education, upon a proper showing made in accordance with the act may "draw an order on the auditor of public accounts in favor of the county treasurer of the county whose application is approved, for such a sum as the state board of educa-

tion shall deem as necessary to carry into effect the application made by the county superintendent of education, and the school board of the county applying for such aid,'' etc.

The sections of the Constitution to be construed are:

Section 90: "The legislature shall not pass local, private or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.: . . . (p) Providing for the management or support of any private or common school, incorporating the same, or granting such school any privileges."

Section 205: "A public school shall be maintained in each school district in the county at least four months during each scholastic year. A school district neglecting to maintain its school four months shall be entitled to only such part of the free school fund as may be required to pay the teacher for the time actually taught."

And section 206: "There shall be a county common school fund which shall consist of the poll tax, to be retained in the counties where the same is collected, and a state common school fund, to be taken from the general fund in the state treasury, which together shall be sufficient to maintain the common schools for the term of four months in each scholastic year. But any county or separate school district may levy an additional tax to maintain its schools for a longer time than the term of four months. The state common school fund shall be distributed among the several counties and separate school districts in proportion to the number of educable children in each, to be determined from data collected through the office of the state superintendent of education in the manner to be prescribed by law."

Section 206, in plain terms, provides for a state and a county "common school fund," and prescribed of what both shall consist, "which shall be sufficient to maintain the common schools for the term of four months in each

scholastic year.'' This is not all; section 206 goes further, and prescribes how and upon what basis the state common school fund shall be distributed among the several counties and separate school districts, viz., "in proportion to the number of educable children in each.''

Section 205 is mandatory upon each school district in every county of the state, and under this section each school district in every county of the state must maintain a public school for at least four months during each scholastic year, and if any county, or any number of counties, fail to comply with this mandate, the delinquent, or delinquents, "shall be entitled to only such part of the free school fund as may be required to pay the teacher for the time actually taught.''

It thus appears to have been the purpose of the makers of the Constitution to provide for a uniform system of public schools for every county in the state for at least a term of four months in each scholastic year. This could have been done by requiring each county to provide funds to accomplish this purpose, but this was not done. The scheme adopted prescribes what shall be done by the state, and also prescribes the basis for the distribution of the state's contribution to this purpose, and this basis is necessarily exclusive, otherwise the legislature could ignore the plan of the Constitution and provide another and essentially different plan for the support of the common schools. Each educable child is the unit upon which the state distributes its bounty to the counties, and the legislature has no power to adopt another and different basis for state aid, which ignores the constitutional unit. A different scheme might have been provided by wiping out county lines and placing the common schools and their support entirely upon the state, but we are not permitted to change the Constitution because the legislative scheme may be more desirable, or may serve as a remedy for admitted evils not anticipated by the framers of the Constitution.

Section 90 of the Constitution seems to make it clear that the support of the common schools by appropriation from the state treasury can only be done in the manner and upon the plan prescribed by sections 205 and 206. The act of the legislature now under consideration does not pretend to distribute the "supplemental common school fund" upon the constitutional basis. It seems to be the theory that the legislature, by labeling the common school fund "supplemental," thereby changed the nature of the appropriation, and in so doing they provided a remedy for a condition entirely outside of the scheme marked out by the organic law. If this is the theory upon which the validity of the law must stand it would seem that the law in question is a special law, providing for the support of a class of common schools in certain localities of the state and is condemned by paragraph "p" of section 90, of the Constitution. It is certain that the legislature could not pass a law providing for the support of any common school *eo nomine*, or for any selected number of common schools. Chapter 5 of the Laws of 1912 is a law providing for the support of a class of common schools. The schools of certain counties provided for by the law are separated from and placed in a different class from the schools located in the other counties, and by this simple expedient they are given special privileges, and are accorded additional support not enjoyed by the schools located in other counties of the state, and it seems this law is undisguisedly a special law to fit local conditions.

Finally, the law to be construed nullifies that part of section 205 reading this way: "A school district neglecting to maintain its school four months, shall be entitled to only such part of the free school fund as may be required to pay the teacher for the time actually taught." The delinquent district under- this provision of the Constitution is, by chapter 5 of the Laws of 1912, not only pardoned, but is to be rewarded by the board of education with legislative sanction. In its practical workings

the school districts penalized by section 205 of the Constitution at once become the objects of special regard by the legislative enactment.  The act of the legislature and the Constitution are in direct conflict.

*Affirmed.*