HAMIEL, CHANCERY CLERK, *v.* RICE, ATTY.-GEN.

(Division B.   Sept. 28, 1936.)

[169 So. 687.   No. 32372.]

F. E. Leach, of Carthage, and **Green, Green & Jack-son**, of Jackson, for appellant.

Greek L. Rice, Attorney-General, and T. J. Barnett, of Carthage, and C. E. Morgan, of Kosciusko, for appellee.

**Griffith, J.,** delivered the opinion of the court.

In the general appropriation bill, chapter 101, Laws 1936, and by section 20 thereof, the Legislature appropriated one million one hundred twenty thousand dollars for the support and maintenance of the common schools,

to be disbursed in proportion to the number of educable children in each county or separate school district; and in the second paragraph of said section there was appropriated an additional sum of one million one hundred twenty thousand dollars to constitute the equalizing fund to be disbursed by the state board of education exclusively for the equalization of school terms.

On April 20, 1936, the auditor sent his warrant, payable to Leake county depository, for twenty-three thousand nine hundred ninety-five dollars and twenty-five cents, for account of common schools, the warrant plainly stating on its face that the disbursement represented thereby was out of the above mentioned equalizing fund. When the said warrant reached the county clerk, he deposited the same in the county depository to the general credit of the county common school fund; and, there having been immediately theretofore a deficiency in that fund, so that the salaries and expenses of the third and fourth months of the constitutional four-month term of the schools in that county had not been paid, the clerk proposed to apply the funds received under the warrant aforesaid first to the liquidation of said deficiency for said third and fourth months. rather than exclusively to the salaries and expenses of the fifth, sixth, seventh, and eighth months during which the school terms were being extended in that county beyond the constitutional four-month term. Learning of this purpose, the Attorney-General filed a petition for a writ of mandamus against the clerk to compel him to issue his warrants against said equalization fund, so that the fund should be applied only to the months subsequent to the first four months of said school term, to which petition the clerk demurred. The court overruled the demurrer; the clerk declined to plead further; the writ was ordered by the court; and the clerk has appealed.

Sections 205 and 206 of the Constitution made it mandatory upon the Legislature and the local authorities of and in the several counties that a public school shall be

maintained in each school district at least four months during each scholastic year; and a fund was created for this purpose consisting, first, of the poll tax to be retained in the respective counties where collected, and, second, an appropriation by the Legislature out of general funds in the state treasury, which appropriation was expressly directed to be distributed among the several counties and separate school districts in proportion to the number of educable children in each. It was contemplated that the Legislature would have before it, at each session wherein appropriations were to be made, all the facts and figures sufficient to enable it to make a fair calculation of the amount of money necessary and proper to operate the schools for the minimum constitutional term of four months estimated upon a statewide, as well as a county, per capita basis, and that the counties and districts in making their expenditures for the four-month constitutional term would each come within the funds so appropriated and distributed on the said per capita basis; and, with this in view, section 206 provided further that "any county or separate school district may levy an additional tax to maintain its schools for a longer time than the term of four months."

Experience soon demonstrated that some counties, owing to exceptional local conditions, would not well be able to conduct their schools for the four-month constitutional term on the two funds above mentioned, or else preferred not to be confined solely to those funds, wherefore a statute was enacted, which, as amended, now appears as section 6725, Code 1930, allowing the board of supervisors to levy annually for public schools a tax upon the taxable property of the county outside of separate school districts to be used for the maintenance of the public schools before, during, or after the expiration of the four months required by the Constitution. This statute was attacked as unconstitutional insofar as it allowed a levy for use during the four-month constitutional term; but the court in St. Louis & S. F. R. Co. v.

Benton County, 132 Miss. 325, 96 So. 689, overruled the contention and held the statute valid. And the same reasoning and result would apply to the local levies of school taxes in separate school districts as allowed by sections 6662, 6663, Code 1930.

Subsequent experience further demonstrated that many of the wealthier counties were able, under local taxation, to maintain their schools for several months beyond the four-month constitutional term, while at the same time a large number of counties, because of a want of wealth in taxable property, were unable to maintain their schools with terms of equal additional lengths as compared with the more fortunate counties, thus depriving the children in the poor counties of equal privilege with those in the rich counties. To meet this condition, the Legislature established a supplemental school extension fund, known as the equalizing fund, and which was to be distributed under the directions of the state board of education to equalize the advantages of the state's total appropriation upon such fair bases of calculation as would take into view the entire school situation throughout the state, and its several parts, including the relative property valuations and the relative necessary expenses of school operations, as brought about by the variety of local conditions, and without being confined as to the supplemental fund to the fixed and inflexible factor of the number of educable children in each county or separate district. This plan of supplemental distribution for the extension of terms was challenged as unconstitutional in Miller v. State, 130 Miss. 564, 94 So. 706, but the court upheld the plan and the appropriation thereunder as being valid.

An examination of the opinions in two foregoing cases decided by this court, together with the cases cited therein requires that we must now definitely hold that the minimum or constitutional term of four months shall be maintained—and, as already said, this minimum maintenance is mandatory upon the Legislature and the local

authorities—out of three funds, and those only: (1) The poll taxes collected in the county; (2) the school taxes levied by the board of supervisors on the property of the county outside of separate school districts and on the property within rural separate school districts, and by the municipal authorities within municipal separate·districts; and (3) the common school per capita fund appropriated by the state. The equalizing fund, separately appropriated by the state, is not applicable to the maintenance, in whole or in part, of the minimum constitutional term of the first four months, because of the said constitutional mandatory minimum of said four months is already equalized. As said in Miller v. State, 130 Miss. 564, 587, 94 So. 706, 709: ''Section 2 of the act [which was the section in that case which appropriated the equalizing fund] provides a different and distinct fund to be used, not for the four-month period of section 206 [of the Constitution], but for an independent schooling purpose beyond the mandatory four-month period of section 206.''

By the plain provisions of the Constitution, any state appropriation to the constitutional four-month term must be distributed solely upon the per capita basis, whereas the equalizing fund is allotted, as already mentioned, upon calculations which admit many other elements into the equation in addition to the per capita feature. To allow the equalizing fund, or any part thereof, to be used to cover deficits in the constitutional four-month term, would be to subvert the constitutional plan of distribution for the maintenance of that term; it would permit the local authorities to wastefully or extravagantly spend this per capita allotment, and fail or refuse to raise any, or not enough, local taxes to complete the constitutional minimum of four months, and then call on the other counties to supply the deficit out of the equalizing fund, so that thereby the delinquents would have both a pardon and a reward for their said constitutional delinquency. State Board v. Pridgen,

106 Miss. 219, 63 So. 416. This is neither contemplated nor allowable under the law, interpreted in the light of the Constitution.

The warrant in this case, as hereinabove stated, showed on its face that it was drawn against the equalizing and not the per capita fund. The proceeds cannot be used to meet deficits in the first four-month constitutional term; and the court was correct in ordering the writ of mandamus as prayed.

Affirmed.