DICKINSON, PRESIDING JUSTICE,
CONCURRING IN PART AND DISSENTING IN PART:
It is always a source of regret to me to be unable to concur in the conclusion reached by a majority of my Associates in the decision of any case, which regret is here more pronounced than usual for the reason that the construction placed by the majority of my Associates on the section of the Constitution here in question confers upon the Legislature the unlimited power to support the public schools which I think it should have, but to so concur would cause me to violate what seems to me the plain language of the Constitution, as well as some of the most elementary rules for the construction of written instruments.[12]
¶ 64. The sentiment of Chief Justice Smith’s words penned in 1923 still rings true. In every challenge to a statute’s constitutionality, the legislative enactment arrives clothed in a presumption of validity; [13] and only in rare cases where we find it unconstitutional beyond a reasonable doubt, will we strike it down.[14] This protective language provides comfortable refuge, particularly when we are asked to strike down a statute serving an important public interest. But, as Chief Justice Smith expressed nearly a century ago, our duty binds us to interpret the Constitution *1033 faithfully by its text.[15]
¶ 65. Here, Article 4, Section 90(p) of the Mississippi Constitution is susceptible to a single reasonable interpretation: It prohibits the Legislature from enacting local laws that make funds available for private and public primary schools.[16] House Bill 1002, clearly a local law, earmarks fourteen percent of a 3.2 percent fee on gross gaming revenue in Tunica County—and only in Tunica County—for educational purposes and teacher salaries in Tunica County—and only in Tunica County.[17]
¶66. I leave it to others to debate whether it is wise policy to fund education in Tunica County with tax revenues from casinos in Tunica County. But the Constitution forbids local laws—such as the one at issue here—from making funds available for public primary schools. And this one does exactly that. Because this portion of House Bill 1002 violates Article 4, Section 90(p) of the Mississippi Constitution, I concur in part and dissent in part.
¶ 67. Article 4, Section 90(p) states:
The Legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.:
[[Image here]]
(p) Providing for the management or support of any private or common school, incorporating the same, or granting such school any privileges.[18]
¶ 68. The provision’s purpose seems clear to me. In adopting our Constitution, our citizens wanted to ensure that statutes providing funding for schools, whether public or private, applied the same to all counties and all school children, thereby removing from the Legislature’s prerogative the ability to enact legislation that favored the school children of a particular county, or group of counties.
¶ 69. Said another way, Article 4, Section 90 imposes a categorical bar on local, private, or special laws for certain enumerated matters, including the support of private or public schools. A local law is “[a] statute that relates to or operates in a particular locality rather than the entire state.”[19] House Bill 1002 clearly is a local law because, by its terms, it is limited to one particular county—Tunica County.[20] And because House Bill 1002 is a local law, it violates Article 4, Section 90.
¶ 70. Article 4, Section 90(p) prohibits local laws “[p]roviding for the management or support of any private or common school, incorporating the same, or granting such school any privileges.” [21] This Court has applied Article 4, Section 90(p) in sev *1034 eral cases. Some concerned Article 4, Section 90(p)’s latter two prohibitions: “incorporating the same” and “granting such school any privileges.”[22] Those are not at issue here.
¶ 71. Instead, this case concerns Article 4, Section 90(p)’s prohibition .of local laws “[providing for the ... support of any. private or common school.”[23] This prohibition consists of three basic elements: (1) the act the statute may not do—“[p]ro-vid[e] for”—(2) the thing the statute may not provide—“support”—and (3) the entity the statute may not provide support for— “any private or common school.”
¶72. In three cases, this Court, has struck down local laws for “[providing for the ... support of any private or common school.”[24] In State Board of Education v. Pridgen, an individual lodged an Article 4, Section 90(p) challenge against a statute that appropriated $5,000 for a supplemental school fund available “ .‘when any county in the state, administering its schools on the present basis of state aid, shall have exhausted all money appropriated by the state for common school purposes, and whose schools cannot run for the constitutional period of four months.’”[25] This Court found that the statute violated Article 4, Section 90(p), reasoning:
It seems to be the theory that the Legislature, by labeling the common school fund' “supplemental," thereby changed the nature of the appropriation, and in so doing they provided a remedy for a condition entirely outside of the scheme marked out by the organic law. If this is the theory upon which the validity of the law must stand, it would seem that the law in question is a special law, providing for the support of a class of common schools in certain localities of the state, and is condemned by paragraph “p” of section 90 of the Constitution. It is certain that the Legislature could not pass a law providing for the support of any common school eo nomine, or for any selected number of common schools. Chapter 5 of the Laws of 1912 is a law providing for the support of a class of common schools. The schools of certain counties provided for by the law are separated from and placed in a different class from the schools located in 'the other counties, and by this simple expedient they are given special privileges, and are accorded additional support not enjoyed by the schools located in other counties of the state, and it seems this law is undisguisedly a special law to fit local conditions.[26]
¶ 73. That statute made funds available for indeterminate schools and districts: those which had exhausted the funds otherwise appropriated to them. It also left open the possibility the funds would never actually reach a school or district: ie., if no school or district actually exhausted the funds otherwise appropriated. But, according to this .Court, the statute was a special law “providing for-the support of a class of *1035 common schools.”[27]
¶74. In Scarbrough v. McAdams Consolidated School District, this Court struck down a statute “ ‘authorizing the board of supervisors of Attala county, Mississippi, to issue bonds for the purpose of building and equipping an agricultural high school in the McAdams consolidated school district.’”[28] The Court found “[t]his was a special act, and we are convinced that it provided for the support of the single school district.”[29] This was so even though the statute itself appropriated no funds, instead authorizing the Attala County Board of Supervisors to issue bonds. The same was true in Hamilton v. Board of Supervisors of Lafayette County, except in that case the Legislature enacted the statute approving the bonds after they already had been issued.[30]
¶ 75. And in Turner v. City of Hattiesburg, we rejected an Article 4, Section 90(p) claim against a statute authorizing bonds to fund Mississippi Normal College because “[t]his college [was] neither a private nor a common school.”[31] Instead, it was “a college established for the purpose of enabling the state to equip its teachers for service in its common schools.”[32]
¶ 76. These decisions shed some light on the meaning of the three elements in this Article 4, Section 90(p) prohibition: “[p]ro-viding for,” “support,” and “any private or common school.” Support -includes monetary support![33] Common school refers to K~12 public primary education.[34] Yet this Court has never, in an Article 4, Section 90(p) case, engaged in an extensive discussion of what it means to provide for. And this case turns on that-meaning.
¶ 77. Here, House Bill. 1002 certainly involves monetary support: it earmarks fourteen percent of a 3.2 percent fee on gross gaming revenue for educational purposes and teacher salary supplementation.[35] The question is whether that support is provided for a common school.
¶ 78. The American Heritage Dictionary defines “provide” as “a. To make available (something needed or desired); furnish: provide food and shelter for a family, b. To supply something needed or desired to: provided her family with food.”[36] Other courts have concluded that “to make available” represents the core meaning of the word - “provide” when interpreting legal texts.[37]
*1036 ¶ 79. One case in particular provides an instructive analysis. In Great Expectations Creative Management, Inc. v. Attorney General of the State of New York, a videotape dating service sought a declaratory judgment that it would not be subject to certain regulatory statutes if it began conducting business in New York.[38] In 1971, the New York Legislature-had enacted the regulatory statutes in question which placed “limitations on contracts involving social referral services, limit[ed] the fee that can be charged, required] that a minimum number of referrals be provided, and call[ed] for the confidentiality of any personal information given.”[39]
¶ 80. The statutes applied to any “social referral service.”[40] And the statute stated “‘the term “social referral service” shall include any service for a fee providing matching of members of the opposite sex, by use of computer or any other means, for the purposes of dating and general social contact.’ ”[41]
¶ 81. Great Expectations argued it was not subject to these statutes because it was not a “social referral service.”[42] It argued it was not a “social referral service” because the statutes applied only to entities “providing matching” and “it allows people to meet each other as a matter of their own volition. In other words, it claims to be merely the facilitator rather than a provider of member-matching services. The claim is that the members, and not the organization, make the match.”[43]
¶ 82. The judge disagreed:
The court cannot agree with that position. It is clear that the scope of the statute is not limited to service agencies which actively match individuals, but encompasses those services for a fee “providing matching of members of the opposite sex, by use of computer or any other means.” The plain dictionary definition of the verb “provide” is “to furnish, to supply or to make available.” (American Heritage Dictionary of English Language [3d ed. 1992].) “Referral” means “directing to a source for information” or “to direct one’s attention to” (id.). Clearly then, the plain language of the statute is not limited only to services that actually do the matching, but includes those agencies which make available the means for persons to do their own matching.[44]
¶ 83. Said differently, Great Expectations believed it did not provide matchmaking services because it never ensured a match occurred. Instead, it merely made resources available so individuals could match themselves. But the judge correctly recognized that “provide” does not mean to mandate or to ensure, but to make-available. The mere fact that Great Expectations made resources available for matchmaking meant it provided matchmaking service regardless of whether any matchmaking ever occurred.
¶ 84. This reasoning should control our decision in this case. The majority concludes that House Bill 1002 does not pro *1037 vide support for a common school because it does not mandate that the Tunica Board of Supervisors actually give the fourteen percent earmarked for educational purposes and teacher salary supplementation to the Tunica County School District. But it does provide the funds and make them available. Like Great Expectations, House Bill 1002 does not actually make a match. But House Bill 1002 indisputably makes funds available. What the Board of Supervisors may or may not do does not change what the Legislature did when it made fourteen percent of the gaming fee available for that use.[45] Because Article 4, Section 90(p) prohibits local laws providing for support, and because “providing” simply means to make available, House Bill 1002 does what it cannot do.
¶ 85. Furthermore, the majority’s argument has been rejected by this Court in Scarbrough. There, we struck down, under Article 4, Section 90(p), a statute which merely “ ‘authorized] the board of supervisors of Attala county, Mississippi, to issue bonds for the purpose of building and equipping an agricultural high school in the McAdams consolidated school district.’ ”[46] That statute did not mandate that any funds reach a particular school or district because it did not require the board to issue the bonds. Instead, it made the support—bonds—available. The same is true here. The statute makes funds available, but the Board ultimately must decide whether they reach a common school.
¶ 86. The provisions of House Bill 1002 that earmark fourteen percent of the gross gaming revenue for educational purposes and teacher-salary supplementation violate Article 4, Section 90(p) because this local law “[p]rovid[es] for the ... support of ... [a] common school.”[47] .So I must dissent from that portion of the majority’s opinion.
COLEMAN, J., JOINS THIS OPINION.

. Miller v. State, 130 Miss. 564, 94 So. 706, 710 (1923) (Smith, C.J., dissenting).

. State ex rel. Hood v. Louisville Tire Ctr., Inc., 55 So.3d 1068, 1072 (Miss. 2011) (citing Fulgham v. State, 47 So.3d 698, 701 (Miss. 2010)).

. Louisville Tire Ctr., Inc., 55 So.3d at 1072 (citing Richmond v. City of Corinth, 816 So.2d 373, 377 (Miss. 2002) (citing Jones v. State, 710 So.2d 870, 877 (Miss. 1998))).

. Hughes v. Hosemann, 68 So.3d 1260, 1275 (Miss. 2011) (citing State ex rel. Moore v. Molpus, 578 So.2d 624, 639 (Miss. 1991) ("constitutional interpretation by this Court is tied to the text of our constitution”).

. Miss. Const. art. 4, § 90(p).

. 2004 Miss. Private and Local Laws ch. 920.

. Miss. Const. art. 4, § 90(p).

. Local Law, Black’s Law Dictionary 803 (abr. 9th ed.).

.Compare Hewes v. Langford, 105 Miss. 375, 62 So. 358, 359-60 (1913) ("Chapter 288 of the Laws of 1912, by its terms, is confined in its operation to Harrison county alone. Without disguise, it is a local law.”), with Miller, 94 So. at 710 (“the appropriation is a general law, is not class legislation, nor a local or special law, since the funds are to equalize public school terms throughout the state by a fair and equitable distribution, and may be used for any school district in any county, or for all of them.”).

.Miss. Const. art. 4, § 90(p).

. See Williamson v. Howell, 155 Miss. 220, 124 So. 319, 321 (1929) (addressing Article 4, Section 90(p)'s prohibition of special or local laws granting schools privileges); Hewes, 62 So. at 359-60 (addressing Article 4, Section 90(p)'s prohibitions of special or local laws granting schools privileges and incorporating schools).

. Miss. Const, art. 4, § 90(p).

. Hamilton v. Bd. of Supervisors of Lafayette Cty., 133 Miss. 14, 96 So. 465 (1923); Scarbrough v. McAdams Consol. Sch. Dist., 124 Miss. 844, 87 So. 140 (1921); State Bd. of Educ. v. Pridgen, 106 Miss. 219, 63 So. 416 (1913).

. Pridgen, 63 So. at 417.

.Id. at 418.

. Id.

. Scarbrough, 87 So. at 141.

. Id.

. Hamilton, 96 So. at 466.

. Turner v. City of Hattiesburg, 98 Miss. 337, 53 So. 681, 683 (1910).

. Id.

. See Pridgen, 63 So. at 417 (finding that an appropriation from the Legislature is support within the meaning of Article 4, Section 90(p)); Scarbrough, 87 So. at 141 (finding that statute authorizing bond issuance provides support within the meaning of Article 4, Section 90(p)).

. Compare Scarbrough, 87 So. at 141 (finding Article, 4, Section 90(p) violation with statute that benefits a public high school), with Turner, 53 So. at 683 (finding that a state college is not a common school within' the meaning of Article 4, Section 90(p)).

. 2004 Miss. Private and Local Laws ch. 920.

. Provide, American Heritage Dictionary of the English Language (5th ed. 2017).

. Land and Marine Devs., Inc. v. Widvey, 546 N.W.2d 380, 382 (S.D. 1996) (citing Webster’s New World Dictionary 481 (rev. pocket ed. 1975) (“The plain and ordinary meaning of the word ‘provide’ is, ‘to make available; supply ... to furnish with[.]’ ”); Great Expectations Creative Mgmt., Inc. v. Att'y Gen. of the *1036 State of N.Y., 162 Misc.2d 352, 616 N.Y.S.2d 917, 919-20 (N.Y. Sup. Ct. 1994) (citing American Heritage Dictionary of the English Language (3d ed. 1992)) (“The plain dictionary definition of the verb ‘provide' is 'to furnish, to supply or to make available.’ ”).

. Great Expectations Creative Mgmt., Inc., 616 N.Y.S.2d at 918.

. Id.

. Id. at 919.

. Id. (emphasis added).

. Id.

. Id.

. Id. at 919-20.

.And even were this not the case, it strains credulity to suggest that a particular county's board of supervisors will comply with the statutory mandate to spend money for educational purposes and teacher salary supplementation in that county without in some way supporting that county’s school district.

. Scarbrough, 87 So. at 141.

. Miss. Const, art, 4, § 90(p).